April L. Hollingsworth (Bar No. 9391)
HOLLINGSWORTH LAW OFFICE, LLC
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801) 415-9909
april@aprilhollingsworthlaw.com

Matthew L. Turner*
Paulina R. Kennedy*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
mturner@sommerspc.com
pkennedy@sommerspc.com
*pro hac vice motions forthcoming

*Attorneys for Plaintiffs and proposed
Collective and Class Members*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **LINDA CROUSE**, individually, and on behalf of all others similarly situated, | **CLASS AND COLLECTIVE ACTION COMPLAINT** FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938 |
| Plaintiffs, | |
| v. | **PROPOSED CLASS ACTION** |
| | **JURY DEMANDED** |
| **R1 RCM HOLDCO, INC.**, a Delaware Corporation, | |
| Defendant. | Case No. _____ Hon. _____ |

Plaintiff, Linda Crouse ("Plaintiff"), by and through her undersigned attorneys, upon personal knowledge as to matters concerning herself and upon information and belief as to other matters and as for her Complaint against R1 RCM Holdco, Inc. ("Defendant" or "R1 RCM"), alleges as follows:

## INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2.     Defendant R1 RCM is an "end-to-end" revenue cycle management company for healthcare organizations across the country.[1] Defendant advertises itself as one of the fastest-growing healthcare companies, with over 28,000 employees carrying out over 60 million patient and clinician engagements each year. *Id*.

3.     Defendant maintains 64 brick and mortar office locations in 17 states across the country. Defendant also employs a large number of people to work remotely in customer service roles. Defendant uses a number of titles to refer to its

---

[1] https://www.r1rcm.com/about (last visited Jan. 12, 2024).

customer service representatives (collectively referred to hereinafter as "CSRs"), including but not limited to: Follow-Up Associate, Customer Service Representative, Patient Registration Representative, Patient Accounts Representative, Financial Counseling Representative, Health Information Management Specialist, and Provider Scheduling Specialist.

4.      Defendant classifies its CSRs as non-exempt and tasks them with the primary job duty of providing over-the-phone customer service.

5.      Defendant employed Plaintiff as an hourly call center employee with the job title of Follow-Up Associate.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly call center employees, are homogenous. In July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited Jan. 12, 2024).

8.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily and weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9.     Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before their scheduled shifts, before they were permitted to log into Defendant's timekeeping system.

10.     More specifically, Defendant failed to compensate CSRs for the time they spend performing activities like turning on and booting up their computers, and logging into all required applications to be prepared to begin working as soon as they were permitted to clock in.

11.     Therefore, Defendant failed to compensate CSRs for all overtime hours worked, overtime gap time when associated with unpaid overtime, and regular hours in non-overtime weeks.

12.     Plaintiff seeks: (a) a declaration that her rights, and the rights of the putative Collective and Class members were violated, (b) a judgment awarding her

unpaid back wages, liquidated damages, and attorneys' fees and costs, to make her and putative Collective and Class members whole for the damages they suffered, and (c) any other remedies to which she and the putative Collective and Class may be entitled to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

13.     At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. §201, *et seq*.

15.     This Court has diversity jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant reside in different states.

16.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or state court of competent jurisdiction."

17.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff, engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

18.    This Court has personal and general jurisdiction over Defendant because it maintains its principal place of business in Utah. *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

19.    Venue is proper in this district and division pursuant to 28 U.S.C. §1391(b) and (c) because Defendant is headquartered and conducts business in this District and division.

20.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

**PARTIES**

21.    Plaintiff, Linda Crouse, is an adult resident of Roseville, Michigan. She worked for Defendant as an hourly Follow-Up Associate from November 23, 2009 to December 11, 2023. Defendant compensated Plaintiff Crouse through the payment of an hourly rate, most recently $20.37 per hour. Crouse's consent to join form is attached as **Exhibit A**.

22.     Additional Opt-In Plaintiffs were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

23.     Defendant, R1 RCM Holdco, Inc. is a Delaware Corporation with its principal place of business located in Murray, Utah.

24.     Defendant maintains a registered office in Utah and its registered agent can be served as follows: CT Corporation System, 1108 E South Union Ave., Midvale, UT 84047.

## GENERAL ALLEGATIONS

25.     Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job requirements and rate of pay.

26.     Defendant maintained documents demonstrating the promised hourly wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

27.     Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

28.     Plaintiff performed under her contract by carrying out her job duties and responsibilities. More specifically, Plaintiff would make phone calls to insurers

to provide them information and resolve medical coding issues to aid in resolution of outstanding hospital and healthcare provider payments. Plaintiff utilized Defendant's applications and systems to track the work performed.

29. Plaintiff also utilized her personal cell phone to perform the functions of her job.

30. Plaintiff additionally performed the required unpaid off-the-clock work.

31. Defendant paid its CSRs at varying hourly rates.

32. Defendant's CSRs, including Plaintiff, typically worked five days each week and up to, and on occasion, more than 40 hours per week.

33. Defendant provided training to hourly call center employees, on, *inter alia*, attendance, schedule and call quality expectations, and Defendant's policies.

34. The training that Defendant provided to all of its CSRs was substantially, if not entirely, the same.

35. For purposes of compensation, Defendant's CSRs clocked in and out for their shifts on their computers using Defendant's timekeeping application, Workday.

36.     At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

37.     Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

38.     Defendant instructed Plaintiff and other similarly situated CSRs to be prepared to work the moment their scheduled shift started. This required Defendant's CSRs to perform daily of-the-clock tasks prior to the start of their shifts and before they clocked into Defendant's timekeeping system. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed those days.

39.     Defendant enforced this policy through its uniform compensation, attendance, and adherence procedures and the call quality assurance system it used to monitor and grade CSRs' calls. For example, Defendant routinely evaluated, and at times disciplined, CSRs based on schedule adherence and call quality metrics, including, but not limited to, the amount of time a CSR would take to complete a task from their queue. Further, Defendant assessed and evaluated its CSRs' handling of calls and their recitation of information outlined on Defendant's scripts.

40.    Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the CSRs' work and CSRs could not perform their jobs without them.

41.    The pre-shift off-the-clock time Plaintiff and Defendant's CSRs spent booting-up and logging into their computer, applications and programs directly benefitted Defendant and was an integral and indispensable part of the CSRs' job responsibilities.

42.    As a result of the pre-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately five (5) minutes of compensation every shift.

43.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching its agreements with Plaintiff and other CSRs.

44.    Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

45.     Despite knowing Plaintiff and other CSRs performed this pre-shift off-the-clock work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted, if not required, it to happen.

46.     On information and belief, Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and similarly situated CSRs booted-up and logged into their computers each shift, along with their clock in and out times in the timekeeping system.

47.     On information and belief, Defendant also possesses, controls and/or has access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

48.     Because Defendant requires its CSRs, including Plaintiff, to perform pre-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spend working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they actually worked.

49.     The pre-shift off-the-clock process took (at least) approximately five minutes per shift.

50.     The pre-shift boot-up and login process generally consisted of the following steps:

a. The CSRs turn on or wake up their computers;

b. After waiting for the computer to boot or wake up, CSRs would enter an eight digit "bit code";

c. Then, CSRs were prompted to login to Windows using the ctrl+alt+delete function, enter their username and password;

d. Next, CSRs would log into and connect to Defendants' protected Network (VPN);

e. The VPN was protected by dual-authentication process for which CSRs used their cell phone to access and enter an additional code;

f. After the CSRs completed the required login process, they opened Defendant's timekeeping and phone software programs, entered their assigned login credentials, and clocked in for their shifts.

51. The boot-up and login process described above took approximately five minutes per shift, or more, depending on how fast/slow the computers were operating and whether there were system updates. Consequently, CSRs had to begin working at least five minutes before their scheduled shifts to complete their start-up and login activities.

52. The CSRs also frequently encountered technical problems while performing this boot-up and login process, which often caused the process to take longer than five minutes.

53.     Defendant's CSRs were not compensated for all of this time because Defendant prohibited and/or prevented CSRs from clocking into its timekeeping software before they performed some, if not all, of the pre-shift off-the-clock work.

54.     Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

55.     Defendant had express and constructive knowledge that its CSRs began the pre-shift boot-up and login process while off-the-clock in order to make sure they were prepared and clocked in on time.

56.     Defendant's policies and practices discouraged its CSRs from recording all time worked.

57.     Despite having express and constructive knowledge of its CSRs' pre-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its CSRs.

58.     The pre-shift off-the-clock work CSRs performed directly benefited Defendant, and was integral and indispensable to their job duties.

## FLSA COLLECTIVE ACTION ALLEGATIONS

59.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

*All current and former hourly CSRs who worked for Defendant in the United States at any time during the past three years.*

(hereinafter referred to as the "Collective"). Plaintiff reserves the right to amend this definition if necessary.

60.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

61.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

62.     Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond 40 hours or more when considering the uncompensated off-the-clock work discussed herein.

63.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

64. Defendant was aware or should have been aware that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty per workweek.

65. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the putative Collective members. This policy and pattern or practice includes, but it not limited to:

   a.  Willfully failing to pay its employees, including Plaintiff and the putative FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime weeks;

   b.  Willfully failing to pay its employees, including Plaintiff and the putative FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of 40 hours per workweek; and

   c.  Willfully failing to record all of the time that its employees, including Plaintiff and the putative FLSA Collective members, worked for the benefit of Defendant.

66. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

67. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are

15

similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

68.     The employment relationships between Defendant and every putative FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every putative Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot-up and login time; and (2) entitled to overtime gap time in applicable weeks, and overtime for hours worked over forty in a week.

69.     Plaintiff estimates the FLSA Collective, including both current and former CSRs during the relevant period, includes thousands of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

70.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly grants permission to issue such a notice, the Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

71.     Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All current and former hourly CSRs who worked for Defendant in the United States at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

72.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates that there are hundreds or thousands of Rule 23 Nationwide Class members. The precise number of Rule 23 Nationwide Class members should be readily available from a review of Defendant's personnel and payroll records.

73.     There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time that Rule 23 Nationwide Class members spent on boot-up/login activities prior to "clocking in" for each shift is compensable time;

b. Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre-shift time at their agreed upon rate for all hours worked in non-overtime workweeks, constitutes a breach of contract or whether Defendant was unjustly enriched.

74. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims, and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

75. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and they have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

76. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of

their own given the relatively small amount of damages at stake for each individual, along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

77. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

78. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

79. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME

80.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

81.     At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

82.     Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

83.     At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

84.     Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

85.     Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

86.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

87. At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly performed five minutes or more of unpaid pre-shift work, but failed to pay these employees the federally mandated overtime compensation for all services performed.

88. All of the off-the-clock worked performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

89. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

90. In workweeks where Plaintiff and the proposed Collective members worked 40 hours or more, the uncompensated pre-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

91. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its CSRs to complete the pre-shift boot-up and log-in process, and Defendant could have properly compensated Plaintiff for this work but did not.

92.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

## COUNT II
## BREACH OF CONTRACT

93.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

94.     At all times relevant to this action, Defendant had binding and valid contracts with Plaintiff and the CSRs to pay them for each hour worked at a pre-established (contractual) regular hourly rate in consideration for the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

95.     Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment for hourly work at a specified rate that was above minimum wage, which Plaintiff accepted and performed pursuant to; Defendant, however, failed to perform its obligations of paying Plaintiff and the Rule 23 Class the promised wages.

96.     For example, Defendant offered to compensate Plaintiff at a minimum of $20.37 per hour if she agreed to perform services for Defendant as a CSR.

97. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with the pre-shift work described herein.

98. By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, agreed-upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

99. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members pursuant to the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) based on Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

100. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but for less than 40 hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

101. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities.

102. As a direct and proximate result of Defendant's contractual breach, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**UNJUST ENRICHMENT/QUANTUM MERUIT**

103. Plaintiff re-alleges and incorporates all previous paragraphs herein.

104. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

105. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties they performed for Defendant's benefit.

106. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required duties.

107. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed-upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

108.     Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection from Defendant.

109.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

110.     Defendant was unjustly enriched by the retention of monies owed to Plaintiff and the Rule 23 Nationwide Class for services performed for Defendant's benefit without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

111.     Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

112.     As a direct and proximate result of Defendant's actions, Plaintiff and the Rule 23 Nationwide Class members suffered damages, including but not limited to, loss of wages.

# <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e. An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class Counsel for the same;

f. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. An Order declaring Defendant's violations of the FLSA were willful;

h. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

j.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

l.      An Order awarding pre- and post-judgment interest on the damages awarded; and

m.      An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, Linda Crouse, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

DATED this 2nd day of February, 2024.

Respectfully Submitted,

/s/ April L. Hollingsworth
HOLLINGSWORTH LAW OFFICE, LLC
April L. Hollingsworth

*/s/ Matthew L. Turner*
SOMMERS SCHWARTZ, PC
Matthew L. Turner*
Paulina R. Kennedy*
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
mturner@sommerspc.com
pkennedy@sommerspc.com
*pro hac vice motions forthcoming*
*Attorneys for Plaintiffs*