April L. Hollingsworth (Bar No. 9391)
HOLLINGSWORTH LAW OFFICE, LLC
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801) 415-9909
april@aprilhollingsworthlaw.com

Matthew L. Turner (*Pro Hac Vice*)
Paulina R. Kennedy (*Pro Hac Vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
mturner@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiffs and proposed
Collective and Class Members*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **LINDA CROUSE**, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **R1 RCM HOLDCO, INC.**, a Delaware Corporation, <br><br> Defendant. | **PLAINTIFF'S UNOPPOSED MOTION FOR SETTLEMENT APPROVAL** <br><br> Case No:  2:24-cv-00088-DBB <br><br> Judge David Barlow |

Named Plaintiff Linda Crouse, on behalf of herself and the other 1646 opt-in Plaintiffs covered by this Fair Labor Standards Act ("FLSA") collective lawsuit (hereinafter "Settlement Collective Members") and Defendant, R1 RCM Holdco Inc.  (hereinafter "Defendant"), have reached a settlement as set forth in the Settlement Agreement and Release of Claims (hereinafter the "Settlement

Agreement") for the total amount of $3,150,000.

As this Court has recognized, FLSA settlements must be judicially approved for fairness. Specifically, "[a]pproval should be granted when: (1) the FLSA settlement is reached as a result of bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Hartley v. Time Warner NY Cable LLC*, No. 13-CV-00158 (RM-MJW), 2014 WL 4437282, at *1 (D. Colo. Sept. 9, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.1982); and *Baker v. Vail Resorts Mgmt. Co.*, Case No. 13–CV–01649, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014)).

Plaintiff files this unopposed motion to respectfully ask the Court to approve the settlement. As explained in the accompanying memorandum of law, judicial approval is warranted because "(1) FLSA issues are actually in dispute; (2) the proposed settlement of those issues is fair and equitable to all parties concerned; and (3) the proposed attorneys' fees are reasonable." Moreover, the requested service award, settlement administration fees, and litigation expenses, are all reasonable and should be approved as sought.

This settlement will fully resolve this litigation, including the putative Rule 23 class claims, which the Named Plaintiff will be dismissing without prejudice.  However, because no class has been certified, and no settlement class is requested under Rule 23(e), the separate settlement-approval requirements of Federal Rule of Civil Procedure 23 do not apply.

**WHEREFORE**, Plaintiff respectfully asks the Court to grant this unopposed motion and sign and enter the accompanying proposed order approving the settlement (attached to the accompanying brief as Exhibit E).

Dated: October 16, 2025                    Respectfully submitted

                                           /s/ *Matthew L. Turner*
                                           Matt L. Turner (admitted *pro hac vice*)
                                           Paulina Kennedy (admitted *pro hac vice*)
                                           SOMMERS SCHWARTZ, P.C.
                                           One Towne Square, 17th Floor
                                           Southfield, Michigan 48076
                                           Phone: (248) 355-0300
                                           mturner@sommerspc.com
                                           pkennedy@sommerspc.com

                                           April L. Hollingsworth (Bar No. 9391)
                                           HOLLINGSWORTH LAW OFFICE, LLC
                                           1881 South 1100 East
                                           Salt Lake City, Utah 84105
                                           Telephone: (801) 415-9909
                                           april@aprilhollingsworthlaw.com

                                           *Attorneys for Plaintiff and the Settlement Collective Members*

## **CERTIFICATE OF SERVICE**

I certify that on October 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                                           /s/ *Matthew L. Turner*
                                           Matthew L. Turner

April L. Hollingsworth (Bar No. 9391)
HOLLINGSWORTH LAW OFFICE, LLC
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801) 415-9909
april@aprilhollingsworthlaw.com

Matthew L. Turner *(Pro Hac Vice)*
Paulina R. Kennedy *(Pro Hac Vice)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
mturner@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiffs and proposed*
*Collective and Class Members*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| **LINDA CROUSE**, individually, and on behalf of all others similarly situated, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR SETTLEMENT APPROVAL** |
| Plaintiffs, | |
| v. | Case No: 2:24-cv-00088-DBB |
| **R1 RCM HOLDCO, INC.**, a Delaware Corporation, | Judge David Barlow |
| Defendant. | |

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................... iii

I.    INTRODUCTION ........................................................................1

II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT .........................1

    a.    Overview of the proceedings ...................................................1

    b.    Settlement terms ...................................................................3

    c.    Reasonableness of Settlement....................................................6

    d.    Reaction of the Settlement Collective Members .......................10

III.    ARGUMENT ...........................................................................10

    a.    For purposes of settlement only, the Court should certify the final collective action..................................................................................10

        i.    Plaintiff believes the Settlement Collective Members are similarly situated ..................................................................11

        ii.    Plaintiff argues that Defendant's defenses are unified across the Settlement Collective Members....................................11

        iii.    Fairness and procedural considerations warrant certification of the Collective for settlement purposes................................11

    b.    The Court should approve the Settlement................................11

        i.    There is a bona fide dispute ........................................12

        ii.    The proposed Settlement is fair and reasonable ...........................13

            1.    The parties fairly and honestly negotiated the Settlement.......13

            2.    Serious questions of law and fact exist and the value of immediate recovery outweighs the mere possibility of future relief .........14

            3.    The Parties agree that the Settlement is fair and reasonable....16

            4.    The Settlement does not undermine the purpose of the FLSA 16

    c.    Plaintiff's Counsel's attorneys' fees are reasonable .................................17

        i.    Plaintiffs are entitled to attorneys' fees under the FLSA..............17

        Factor 1: The time and labor required..............................................19

        Factor 2: The novelty and difficulty of the questions Presented by the case......................................................20

        Factor 3: The skill requisite to perform the legal service properly.20

i

    Factor 4: The preclusion of other employment by the attorneys due to
        acceptance of the case.......................................................20

    Factors 5 and 12: The customary fee/awards in similar cases.........21

    Factor 6: Whether the fee is fixed or contingent.............................22

    Factor 7: Time limitations imposed by the client or
        the circumstances ....................................................22

    Factor 8: The amount involved and the results obtained.................23

    Factor 9: The experience, reputation, and ability of the attorneys ...38

    Factor 10: The "undesirability" of the case .....................................24

    Factor 11: The nature and length of the professional relationship
        with the client ..................................................24

    Summary.........................................................................................24

ii.    **The lodestar cross-check also confirms the reasonableness of the
fee request** .................................................................................25

d.    The requested litigation expenses and settlement administration
fees are reasonable ..................................................................26

e.    The proposed service payment is reasonable.............................................27

IV.    CONCLUSION.........................................................................................29

## INDEX OF AUTHORITIES

### Cases

*Baker v. Vail Resorts Mgmt. Co.*,
  2014 WL 700096 (D. Colo. Feb. 24, 2014) ................................................................ 12, 13, 16

*Barbosa v. National Beef Packing Co., LLC*,
  2015 WL 4920292 (D. Kansas Aug. 18, 2015) ........................................................... 24

*Been v. O.K. Indus., Inc.*,
  2011 WL 4478766 (E.D. Okla. Aug. 16, 2011) .......................................................... 22

*Berry v. Schulman*,
  807 F.3d 600 (2015) .................................................................................................... 17

*Blanco v. Xtreme Drilling and Coil Services, Inc.*,
  No. 16-cv-00249-PAB-SKC, 2020 WL 4041456 (D. Colo. July 17, 2020) ............... 28

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................... 17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................... 17

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens ,Cty., Okla.*,
  8 F.3d5-26 (10th Cir. 1993) ........................................................................................ 26

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. Kan. 1988) ............................................................................ 19

*Candelaria v. Health Care Service Corporation*,
  2020 WL 6875828 (D. New Mexico Nov. 4, 2020) ..................................................... 28

*Clark v. Ecolab Inc.*,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ............................................................. 18

*Dalal v. Alliant Techsystems, Inc.*,
  927 F. Supp. 1374 (D. Colo. 1996) ............................................................................. 23

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .......................................................................................... 13

*Dewey v. Volkswagen of Am.*,
  728 F. Supp. 2d 546 (D. NJ. 2010) ............................................................................. 25

*Dillworth v. Case Farms Processing, Inc.*,
  2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ............................................................... 23

*Droegemueller v. Petroleum Dev. Corp.*,
  2009 U.S. Dist. LEXIS 123875 (D. Colo. Apr. 7, 2009) ............................................ 19

*Farrar v. Hobby*,
  506 U.S. 103 (1992) .................................................................................................... 23

*Feerer v. Amoco Prod. Co.*,
  1998 U.S. Dist. LEXIS 22248 (D. N.M. 1998) ........................................................... 22

*Fields v. Luther*,
  1988 WL 121791 (D. Md. July 12, 1988) ................................................................... 20

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) ..................................................................................... 18

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................... 28

*Gottlieb v. Barry*,

43 F.3d 474 (10th Cir. 1994) .................................................................................... 17, 19
Gray v. Phillips Petrol. Co.,
    971 F.2d 593 (10th Cir. 1992) ................................................................................... 26
Hartley v. Time Warner NY Cable LLC,
    2014 WL 4437282 (D. Colo. Sept. 9, 2014) ............................................................ 12, 13
Hensley v Eckerhart,
    461 U.S. 424 (1983) ................................................................................................... 17
In re AT&T Corp. Secs. Litig.,
    455 F.3d 160 (3d Cir. 2006) ....................................................................................... 25
In re Core Bond Fund,
    2011 WL 13223541 (D. Colo. Sept. 30, 2011) ........................................................... 25
In re Molycorp, Inc. Sec. Litig.,
    2017 WL 4333997 (D. Colo. Feb. 15, 2017) ............................................................... 14
In re Qwest Comms. Int'l, Inc. Sec. Litig.,
    625 F. Supp. 2d 1133 (D. Colo. 2009) ........................................................................ 15
In re Rite Aid,
    396 F.3d 294 (3d. Cir. 2005) ...................................................................................... 25
Johnson v. Georgia Highway Express, Inc.,
    488 F.2d 714 (5th Cir. 1974) ...................................................................................... 18
Kirsch v. Delta Dental,
    534 Fed. Appx. 113 (3d Cir. 2013) .............................................................................. 25
Kirven v. Cent. States Health & Life Co.,
    2015 WL 1314086 (D.S.C. Mar. 23, 2015) ................................................................. 17
Lindow v. United States,
    738 F.2d 1057 (9th Cir.1984) ...................................................................................... 28
Loeza v. JP Morgan Chase Bank NA,
    2014 WL 4912730 (S.D. Cal. Sept. 30, 2014) ............................................................ 28
Lynn's Food Stores, Inc. v. United States,
    679 F.2d 1350 (11th Cir.1982) ............................................................................... 12, 18
Miles v. BKP Inc.,
    2024 WL 2724007 (D. Colo. May 28, 2024) ............................................................... 21
Mishkin v. Zynex, Inc.,
    No. 2012 WL 4069295 (D. Colo. Sept. 14, 2012) .................................................. 19, 25
Ostrander v. Custom Eng'g Servs., LLC,
    2018 WL 1152265 (D. Colo. Mar. 5, 2018) ................................................................. 10
Ostrander v. Customer Eng'g Servs., LLC,
    2019 WL 764570 (D. Colo. Feb. 20, 2019) ................................................................. 27
Peterson v. Mortg. Sources, Corp.,
    2011 WL 3793963 (D. Kan. Aug. 25, 2011) ............................................................... 17
Peterson v. Nelnet Diversified Solutions, LLC,
    2022 WL 408241 (D. Colorado February 10, 2022) .................................................... 21
Pliego v. Los Arcos Mexican Rests., Inc.,
    313 F.R.D. 117 (D. Colo. 2016) .................................................................................. 27
Prim v. Ensign United States Drilling, Inc.,
    2019 WL 4751788 (D. Colorado Sept. 30, 2019) ........................................................ 21
Quintanilla v. A&R Demolition, Inc.,
    2008 WL 9410399 (S.D. Tex. May 7, 2008) ............................................................... 16
Ramos v. Lamm,

   713 F.2d 546 (10th Cir. 1983) ........................................................................................ 18

*Reynolds v. Fidelity Investments Institutional Operations Co., Inc.*,
   2020 WL 92092 (M.D.N.C. Jan. 8, 2020) ..................................................................... 21

*Rosenbaum v. MacAllister*,
   64 F.3d 1439 (10th Cir. 1995) ...................................................................................... 17

*Shaw v. Interthinx, Inc.*,
   2015 WL 1867861 (D. Colo. April 22, 20165) ............................................................ 21

*Silva v. Miller*,
   547 F. Supp. 2d 1299 (S.D. Fla. 2008) ........................................................................ 20

*Slaughter v. Sykes Enterprises, Inc.*,
   2019 WL 529512 (D. Colo. Feb. 11, 2019) ................................................................ 21

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ......................................................................................... 27

*Temp. Servs. Ind. v. Am. Int'l Group Inc.*,
   2012 WL 4061537 (D.S.C. Sept. 14, 2012) ............................................................... 18

*Tennessee Coal Iron & R. Co., v. Muscoda Local No. 123*,
   321 U.S. 590 (1944) ...................................................................................................... 28

*Thiessen v. Gen. Electric Capital Corp.*,
   267 F.3d 1095 (10th Cir. 2001) .............................................................................. 10, 11

*Valverde v. Xclusive Staffing, Inc.*,
   No. 16-cv-00671-RM-NRN, 2020 WL 4057585 (D. Colo. July 20, 2020) ................. 28

*Vaszlavik v. Storage Tech. Corp.*,
   2000 WL 1268824 (D. Colo. Mar. 9, 2000) ............................................................... 21

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 25

*Whittington v. Taco Bell of Am., Inc.*,
   2013 WL 6022972 (D. Colo. Nov. 13, 2013) .................................................. 17, 20, 21

## Statutes

 29 U.S.C. § 21 ................................................................................................................. 26

29 U.S.C. §§ 206, 207, 211(c) and 215(a) ......................................................................... 6

## Other Authorities

*Task Force Report*,
   108 F.R.D. ..................................................................................................................... 25

## I.    INTRODUCTION

After drawn out, hard-fought litigation, Named Plaintiff Linda Crouse, on behalf of herself and the other 1,646 opt-in Plaintiffs covered by this Fair Labor Standards Act ("FLSA") collective lawsuit (hereinafter "Settlement Collective Members") and Defendant, R1 RCM Holdco Inc. (hereinafter "Defendant"), have reached a settlement as set forth in the Settlement Agreement and Release of Claims (hereinafter the "Settlement Agreement") (attached as Exh. A) for the total amount of $3,150,000.

The settlement requires Defendant to make a total payment of $3,150,000 that, subject to this Court's approval, will be distributed as follows:

a.  No less than $2,010,500 to the 1,647 Settlement Collective Members for damages to be allocated pursuant to the allocation schedule established in the Agreement.

b.  Service payment to Named Plaintiff Linda Crouse in the amount of $7,500;

c.  Settlement administration fees to Atticus Administration, LLC, which should not exceed an amount of $17,000;

d.  $1,050,000 to Plaintiff's Counsel for attorneys' fees; and

e.  An amount not to exceed $65,000 to Plaintiff's Counsel for reimbursement of litigation expenses.

This Court regularly holds that FLSA collective settlements must be judicially reviewed for fairness. *See* pp. 23-29 *infra*. As discussed in this brief, judicial approval of the settlement is warranted, and the settlement should be implemented consistent with the terms and conditions of the Parties' Settlement Agreement.

## II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT

### a.    Overview of the proceedings.

The instant action was filed on February 2, 2024 asserting collective and class action claims under the Fair Labor Standards Act ("FLSA") and for breach of contract or, alternatively, unjust

enrichment, alleging unpaid wages, including overtime, arising from Plaintiff's employment with Defendant. [ECF No. 1]. In general, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and the Settlement Collective Members for compensable off-the-clock work performed in connection with booting up and logging into and out of Defendant's computer systems, programs and applications. [*Id.*].

On April 1, 2024 Defendant filed its Answer and Affirmative Defenses. In total, Defendant stated 26 affirmative and other defenses to Plaintiff's claims. [ECF No. 36].

After appearance of Defendant's Counsel and through mid-April 2024, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims; the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator. (Exh. B, Turner Decl. at ¶ 15). Ultimately, the Parties decided to submit the case to mediation. (*Id.* at ¶ 16).

On August 26, 2024, the Parties participated in a mediation session of this matter, which was conducted by experienced and nationally renowned class and collective wage action mediator, Michael Russell, Esq., but did not reach an agreement. (*Id.* at ¶ 17). To prepare for the mediation, Plaintiff's Counsel reviewed and analyzed the following materials, that consisted of multiple documents and substantial electronic data:

    a.    Information pertaining to the number of putative Class Members employed by Defendant during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; hours worked per week; total weeks worked; total shifts worked; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

    b.    Data modeling and related statistics identifying the alleged off-the-clock work performed by Plaintiff, putative Class Members, and the Settlement Collective Members;

    c.    Voluminous time and pay records for Plaintiff, putative Class Members, and the

2

Settlement Collective Members;

d.      Training and Policy materials; and

e.      Offer letter and other employment documents related to Plaintiff and opt-in Plaintiffs.

(*Id.* at ¶ 28).

Over the next few months, the Parties negotiated the issuance (including form and notice mechanisms) of step-one conditional notice to the putative FLSA collective. (*Id.* at ¶ 18). On October 8, 2024, the Parties filed a Joint Stipulation Regarding Conditional Certification as a Collective Action, which the Court granted and entered on December 3, 2024. (*Id.* at ¶ 19).

Collective notice was issued to 11,373 putative collective members on January 30, 2025. (*Id.* at ¶ 20). At the conclusion of the collective notice period a total of 1,647 individuals (including the Named Plaintiff) had joined the action as opt-in Plaintiffs. (*Id.* at ¶ 21).

Following the conclusion of the collective notice period, the Parties exchanged certain payroll and other data concerning the Settlement Collective. (*Id.* at ¶ 22).

On July 25, 2025, the Parties participated in a second mediation session of this matter, which was again conducted by mediator Michael Russell, Esq., and reached an accord resulting in this Agreement. (*Id.* at ¶ 23). Over the next few months, the Parties negotiated and finalized the long-form settlement agreement, which is now before the Court for approval. (*Id.* at ¶ 24).

At all times, the Parties' settlement negotiations have been non-collusive, adversarial, at arm's length, and with the assistance of a well-respected third-party mediator. (*Id.* at ¶ 25).

**b.  Settlement terms.**

At the conclusion of the Parties' negotiation, they reached a $3,150,000 settlement (hereinafter "Total Settlement Amount") that was structured as follows:

a.      Defendant will deposit the Total Settlement Amount within seven days after the Effective Date ("the date that the Court's approval of this Settlement Agreement and Release of Claims and the corresponding dismissal becomes a final, non-

3

appealable order.") (Exh. A at §§ 1.8, 3.1(B));

b.  The following will be paid from the Total Settlement Amount:

   i.  There will be a maximum of $1,050,000 in attorneys' fees, plus actual and reasonable litigation expenses in an amount not to exceed $65,000, for which Plaintiff's Counsel will apply for approval with the Court (*Id.* at § 3.2(A));

   ii.  Plaintiff will apply for, and Defendant will not oppose or object to, a service payment in the amount of $7,500 to Named Plaintiff Linda Crouse (*Id.* at § 3.2(C));

   iii.  Settlement administration fees to administrator Atticus Administration, LLC, estimated not to exceed an amount of $17,000;

   iv.  The remaining amount of at least $2,010,500 shall be deemed the Collective Settlement Fund and will be paid to the 1,647 Settlement Collective Members for damages to be allocated pursuant to the allocation schedule established in the Agreement (*Id.* at § 1.4);

   v.  Any amount of unapproved attorneys' fees, litigation expenses, or service payment, will be allocated to the Collective Settlement Fund. (*Id.* at § 3.2(B)).

c.  Defendant will pay any required employer-side payroll taxes associated with the payment of any wages to the Settlement Collective Members separate from and in addition to the Total Settlement Amount (*Id.* at § 1.23).

d.  Each Settlement Collective Member shall receive a *pro rata* cash payment accounting for each Settlement Collective Member's state of work and estimated number of workweeks. The formula utilized to calculate the amount of each Individual Settlement Checks shall be as follows:

   1.  Each Settlement Collective Member shall be assigned one (1) point for each week they worked as a R1 Remote Associate from February 2, 2021 through December 3, 2024, according to Defendant's time records.

   2.  Each Settlement Collective Member shall be assigned an additional one-tenth (0.1) of one point for each week they worked as a R1 Remote Associate from February 2, 2021 through December 3, 2024, according to Defendant's time records, and during which week they worked in one of the following states:

      (i)     Arizona
      (ii)    Illinois
      (iii)   Kentucky

4

          (iv)     Maryland
          (v)     Nevada
          (vi)     North Carolina
          (vii)     Oregon
          (viii)    Pennsylvania
          (ix)     South Carolina
          (x)     Washington

3. Each Settlement Collective Member shall be assigned an additional three-tenths (0.3) of one point for each week they worked as a R1 Remote Associate from February 2, 2021 through December 3, 2024, according to Defendant's time records, and during which week they worked in the state of California.

4. To calculate each Settlement Collective Member's proportionate share of the Collective Settlement Fund, the Settlement Administrator shall:

    (i)     Add all points calculated for each Settlement Collective Member to obtain the "Total Denominator;"

    (ii)    Divide the number of points for each Settlement Collective Member by the Total Denominator to obtain each Settlement Collective Member's portion of the Collective Fund;

    (iii)   Multiply each Settlement Collective Member's portion of the Collective Settlement Fund by the total amount of the Collective Settlement Fund to determine each Collective Settlement Member's individual settlement payment. The sum of the individual settlement payments for all Settlement Collective Members shall equal the Final Collective Settlement Fund. Any amounts of the Collective Settlement Fund that are not included in the Final Collective Settlement Fund shall be deemed Unclaimed Monies, and the Settlement Administrator shall return those funds to Defendant.

(*Id.* at § 3.1).

e. The payments to the Settlement Collective Members will not require any type of claims process and each Settlement Collective Member will be automatically sent their individual settlement payment. (*Id.* at § 2.5(B)).

f. The Settlement Collective Members will have sixty (60) calendar days after the date of the initial mailing of their settlement checks to redeem their settlement payments. (*Id.* at § 2.5(G)). Proceeds from settlement payments that are not negotiated will be returned to Defendant. (*Id.* at § 2.5(H)).

g. The following language shall be included by the Settlement Administrator on the back of each Individual Settlement Check:

> *By cashing this check, I acknowledge that I have reviewed and understand the release of claims against R1 RCM Holdco Inc., as set forth in Section 4.1 of the Settlement Agreement and in the Notice of Settlement that I received, and that I am knowingly and voluntarily agreeing to be bound by the release of claims against R1 RCM Holdco Inc. in the Settlement Agreement.*

(*Id.* at § 2.5(I)).

h. "Released Claims" means: any and all federal, state, and local wage and hour claims arising from the Settlement Collective Members' employment, including statutory claims, whether known or unknown, in law or in equity, that accrued or accrue prior to the date of the Approval Order, including but not limited to FLSA claims, including but not limited to claims under 29 U.S.C. §§ 206, 207, 211(c) and 215(a), including liquidated damages, and claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, liquidated damages, punitive damages and/or penalties, and claims under the Employee Retirement Income Security Act ("ERISA") that are related or derivative of such claims or theories. Notwithstanding the foregoing, "Released Claims" does not include any claim that may not be waive by law, including but not limited to any claim for vested benefit entitlements under a plan governed by ERISA. (*Id.* at § 1.15).

i. For tax purposes, 50% of each Individual Settlement Check for damages associated with the wage and hour claims (i.e., payments to Collective Members) shall be treated as back wages, and the other 50% of each Individual Settlement Check shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief. (*Id.* at § 2.5(D)).

**c. Reasonableness of the Settlement.**

The Parties encountered significant complexities in reaching this settlement. (Exh. B, Turner Decl. at ¶ 33). Among other things, the Parties performed an extensive review of substantial testimonial document and data production, along with substantial legal research, to identify allegedly compensable off-the-clock-time. (*Id.*). Counsel for both Parties demonstrated substantial effort, expertise, dedication and creativeness in making sure that the current settlement was fair, reasonable and adequate to both sides. Had all those efforts not occurred, and the hurdles and

6

obstacles overcome, this case, and the collective wide settlement, would never have been reached. (*Id.*).

Furthermore, Defendant asserted numerous legal and factual defenses to Plaintiff's claims and collective/class certification efforts including, among others, that:

a. A large portion of the Settlement Collective Members were subject to binding arbitration agreements and class action waivers.

b. The time Plaintiffs and the Settlement Collective Members sought compensation for was not compensable under the FLSA or any state wage and hour law.

c. The time Plaintiffs and the Settlement Collective Members sought compensation for was not compensable because it was *de minimis*.

d. Defendant maintains written employment policies that require employees to report all hours worked and prohibit employees from performing any off-the-clock work.

e. Defendant instructs and requires employees to report any suspected violation of Defendant's policies prohibiting off-the-clock work.

f. Defendant will tender putative Class Members to testify that they did not work off-the-clock and/or that any off-the-clock work alleged by Plaintiff and the Settlement Collective Members is greatly exaggerated.

g. The Settlement Collective Members engaged in personal, non-compensable activities at the beginning of their shifts.

h. Plaintiff's allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks she describes.

i. The Settlement Collective Members will not be able to recover alleged off-the-clock time because Defendant lacked actual or constructive knowledge of such hours worked.

j. Plaintiff and the Settlement Collective Members will not be able to establish the existence of any enforceable contract for additional wages between them and Defendant, or alternatively, unjust enrichment to Defendant.

k. Plaintiff and the Settlement Collective Members were paid for all worked performed.

l. The Settlement Collective Members will not satisfy the requirements for certification under Rule 23 or the Section 216(b) of the FLSA.

m.  Plaintiff and the Settlement Collective Members will not be able to establish that Defendant's alleged violations, if any, were willful.

n.  Plaintiff and the Settlement Collective Members will not be able to recover liquidated damages.

(*Id.* at ¶ 34).

The existence of Defendant's factual and legal arguments weighed on the parties' decision to resolve the case. While Plaintiff's Counsel takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiff's wage claims simply cannot be disregarded in measuring the reasonableness of the settlement. Specifically, settling this case now saves the parties from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation.  Should the parties have continued to litigate the case, they would have been faced with no less than 6 to 12 months of additional formal discovery (individual collective member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by motions for FLSA certification and decertification, numerous dispositive motions, and eventually one or more trials.  It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. (*Id.* at ¶ 35).

Plaintiff's Counsel retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLP to assist in preparing a time-consuming and complicated damage analysis of all claims at issue in this case. (*Id.* at ¶ 36).

In her complaint, Plaintiff estimated that she worked five (5) minutes of off-the-clock work per day associated with pre-shift off-the-clock work.  However, Defendant has insisted that Plaintiff did not perform any work off-the-clock and, if she did perform any off-the-clock work, she did so without Defendant's knowledge or permission. Further, Defendant continued to assert that if Plaintiff performed any off-the-clock work, any such work was *de minimis* and was not compensable under state or federal law. (*Id.* at ¶ 37).

8

Utilizing the five (5) minutes per day estimate, Plaintiff's Counsel and the expert economist developed a time consuming and complicated damage analysis of all claims and calculated the Defendant's maximum exposure for all claims (including overtime wages, straight time wages, liquidated damages on all unpaid overtime wages, and damages available under various state wage and hour statutes) equals $6,646,527. (*Id.* at ¶ 38).

Based on the damage analysis conducted by Collective Counsel and their damages expert, and in light of the factual and legal defenses identified above, the $3,150,000 gross settlement amount equates to 47.39% of Defendant's maximum alleged damage exposure. (*Id.* at ¶ 39). Further, the $3,150,000 settlement equals a gross amount of $1,911.41 to each Settlement Collective Member. This is a tremendous result when compared to similar wage and hour cases and equates to payment of approximately 81.2 hours of compensation to each of the Settlement Collective Members. (*Id.* at ¶ 39).

The proposed release by the Settlement Collective Members was extensively scrutinized and negotiated by the attorneys involved in this litigation and is *not* a general release of all claims. It represents a fair compromise and constitutes a fair negotiated bargain for release of claims that arise from the facts as alleged in the Complaint. Plaintiff has reviewed and consented to the terms in the settlement agreement, has afforded full access to Plaintiff's Counsel, and has signed the settlement and release. (*Id.* at ¶ 42).

The settlement was the result of arm's-length negotiations, with assistance by esteemed and very experienced wage and hour mediator Michael Russell in two separate mediation sessions, conducted by experienced counsel for all parties, and reached after extensive discovery production by the Defendant. (*Id.* at ¶ 43). The work performed allowed each party to intelligently, and in good faith, weigh both the risks and benefits of settlement as compared to continued litigation. These efforts culminated in a substantial settlement which provides the Settlement Collective Members with an opportunity to resolve their claims against Defendant in a meaningful way. (*Id.*). Further, neither Plaintiff's Counsel, or the Named Plaintiff, have any conflict with one another or with any member of the Settlement Collective. (*Id.*).

9

Plaintiff's Counsel fully endorses this settlement and believes that it is truly in the best interests of all parties. (*Id.* at ¶ 44).

### d.  Reaction of the Settlement Collective Members.

The reaction by the Settlement Collective Members to the settlement has been positive. (Exh. B, Turner Decl. at ¶ 71). In addition to the Named Plaintiff executing the Settlement Agreement and consenting to its terms, on August 7, 2025 and September 29, 2025, Plaintiffs' Counsel issued email communications outlining the primary terms of the Parties' Settlement to the 1,647 Settlement Collective Members. Among other things, the communications identified the following settlement terms: gross settlement amount; net settlement pool to be divided between the Settlement Collective Members; requested attorneys' fees, litigation expenses, service award, and settlement administration fees; tax treatment' and allocation formula. By way of those communications, Plaintiff's Counsel encouraged the Settlement Collective to communicate with them should they have any questions. Since issuing the communications none of the Settlement Collective Members have expressed any concerns or dissatisfaction with the settlement. (*Id.*).

## III.   <u>ARGUMENT</u>

### a.    For purposes of settlement only, the Court should certify the final collective action.

"Final class certification is generally required before a court may approve a collective action settlement." *Ostrander v. Custom Eng'g Servs., LLC*, 2018 WL 1152265 at *2 (D. Colo. Mar. 5, 2018). After the initial "notice" stage, in deciding whether to certify a collective action at the second stage, the court applies a stricter standard and considers several factors, including: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations . . . ." *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001).

10

As discussed below, each of these requirements is satisfied:

### i. Plaintiff believes the Settlement Collective Members are similarly situated.

Plaintiff submits that because the working conditions of the Settlement Collective Members are similar, this factor is in favor of final certification. For example, Plaintiff maintains that the Settlement Collective Members perform substantially similar job duties, receive substantially similar training, and utilize substantially similar same hardware and software. Further, Plaintiff contends that the Settlement Collective Members are subject to the same compensation policies and schedule adherence regulations.

### ii. Plaintiff argues that Defendant's defenses are unified across the Settlement Collective Members.

With respect to the second factor, Plaintiff views Defendant's defenses as being unified across the Settlement Collective Members. As reflected in the Parties' various filings and as summarized at pages 7-8 *supra*, the parties sharply disagree regarding the viability of Plaintiffs' FLSA wage claims including, among other things: 1) whether the Settlement Collective Members actually performed compensable off-the-clock work; 2) whether Defendant had knowledge of the off-the-clock work; 3) whether the Settlement Collective Members claims fail under the *de minimis* doctrine; and 4) the amount of alleged off-the-clock work actually performed.

### iii. Fairness and procedural considerations warrant certification of the Collective for settlement purposes.

As for the third factor with respect to final certification, this Settlement is fair – both in substance and procedurally – as explained *supra* at pages 8-9. For these reasons, the Parties respectfully request that the Court grant final certification for purposes of the settlement set forth in the Agreement.

### b. The Court should approve the settlement.

Plaintiff submits this Unopposed Motion to seek approval of the Parties' settlement under

section 216(b) of the FLSA, as such settlements may require court approval. As this Court has recognized, "[a]pproval should be granted when: (1) the FLSA settlement is reached as a result of bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Hartley v. Time Warner NY Cable LLC*, 2014 WL 4437282 at *1 (D. Colo. Sept. 9, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.1982); and *Baker v. Vail Resorts Mgmt. Co.*, 2014 WL 700096 at *1 (D. Colo. Feb. 24, 2014)). There must also be an examination of whether the settlement agreement "undermines the purposes of the FLSA." *Baker,* 2014 WL 700096 at *2. The settlement of this case meets all four of these requirements.

### i.   There is a bona fide dispute.

The Agreement resolves a bona fide dispute. To demonstrate a bona fide dispute,

> parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Hartley*, 2014 WL 4437282 at *1.

The genesis of this case focuses on Plaintiff's allegations that Defendant failed to pay the Settlement Collective Members for pre-shift work performed off-the-clock in connection with computer hardware and software boot-up and shut down activities. As set forth *supra* at pages 7-8, Defendant asserts a litany of defenses to Plaintiff's claims including, among other things: 1) whether the Settlement Collective Members actually performed compensable off-the-clock work; 2) whether Defendant had knowledge of the off-the-clock work; 3) whether the Settlement Collective Members claims fail under the *de minimis* doctrine; and 4) the amount of alleged off-the-clock work actually performed. Thus, Defendant disputes that it violated FLSA in any respect, and asserts that, regardless, any violation was not willful, so no liquidated or punitive damages could be available to the Settlement

12

Collective Members.

If Plaintiff's allegations were proven correct, Defendant would be faced with the prospect of a monetary judgment in favor of Plaintiff and the Settlement Collective Members, as well as an obligation to pay attorneys' fees and litigation expenses incurred by Plaintiff. If Defendant's arguments were proven correct, then Plaintiff and the Settlement Collective Members would recover no money, and may be required to pay Defendant's litigation expenses.

Further, many of the Settlement Collective Members were subject to mandatory individual (non-collective) arbitration, which would have resulted in years of arbitration to secure individual awards for said individuals. There is thus a bona fide dispute between the Parties under the FLSA.

### ii.   The proposed Settlement is fair and reasonable.

The Agreement is fair and reasonable. "To be fair and reasonable, a FLSA settlement must provide adequate compensation to the employee[s] and must not frustrate the FLSA policy rationales." *Hartley*, 2014 WL 4437282 at *2 (citing *Baker*, 2014 WL 700096 at *2). Courts consider four factors to determine whether a settlement is fair and reasonable:

> whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable

*Id*.

### 1.   The parties fairly and honestly negotiated the Settlement.

The settlement was reached after hard-fought adversarial litigation, including extensive investigation, legal research, and informal discovery. The Agreement was formally negotiated following two arms-length mediation sessions with respected wage and hour mediator Michael Russell. The use of a mediator weighs against a finding of collusion. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue

13

pressure"); *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997 at *4 (D. Colo. Feb. 15, 2017) (collecting cases and finding that "Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved").

Moreover, as further discussed *supra* at pages 8-9 the settlement represents an outstanding result in light of the potential damages and Defendant's defenses. Specifically, Plaintiff's Counsel and the expert economist developed a time consuming and complicated damage analysis of all claims and calculated the Defendant's maximum exposure for all claims (including overtime wages, straight time wages, liquidated damages on all unpaid overtime wages, and damages available under various state wage and hour statutes) equals $6,646,527. (Exh. B, Turner Decl. at ¶ 38). Based on the damage analysis conducted by Collective Counsel and their damages expert, and in light of the factual and legal defenses identified above, the $3,150,000 gross settlement amount equates to 47.39% of Defendant's maximum alleged damage exposure. (*Id.* at ¶ 39). Further, the $3,150,000 settlement equals a gross amount of $1,911.41 to each Settlement Collective Member. This is a tremendous result when compared to similar wage and hour cases and equates to payment of approximately 81.2 hours of compensation to each of the Settlement Collective Members. (*Id.* at ¶ 40).

In sum, there was no fraud or collusion between the Parties in reaching the settlement. Rather, the settlement is the product of an arms-length negotiation by experienced counsel and has the effect of (1) providing significant relief to Plaintiff and the Settlement Collective Members, and (2) eliminating the inherent risks both sides would bear if this litigation continued to a resolution on the merits. Thus, the Court should find that the parties fairly and honestly negotiated the settlement.

**2.  Serious questions of law and fact exist and the value of**

**immediate recovery outweighs the mere possibility of future relief.**

Moreover, there exist disputed questions of law and fact that render ultimate success, for either side, uncertain. Both Parties recognize that proving the existence of off-the-clock work and demonstrating its compensability presents a substantial challenge. The Parties dispute application of the *de minimis* doctrine and its impact to the asserted off-the-clock work in this case. Further, the Parties dispute whether the law requires liability for payment of "gap time" wages (time worked in weeks with less than 40 hours). Defendant has also asserted that in the event a violation of the FLSA is found, it acted at all times in good faith, thereby negating the application of liquidated damages. Further, many of the Settlement Collective Members signed arbitration agreements that prevented them from participating in this lawsuit. Nevertheless, the settlement provides for their recovery irrespective of the arbitration agreements.

Although the Parties both believe their cases are strong, they are subject to the considerable risk that is inherent in litigation. "The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility no recover after long and expensive litigation." *In re Qwest Comms. Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Here, continued litigation and a trial on the merits would involve significant risk as to both liability and damages, with the one certainty being both sides incurring an exorbitant amount of attorney fees and expenses. The Parties' counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The Parties' Settlement Agreement alleviates these uncertainties and provides for immediate (and meaningful) recovery to the Settlement Collective Members instead of the mere possibility of future relief after protracted litigation. It likewise alleviates uncertainties for Defendant, as damages will be ascertained and agreed to without a trial and its attorneys' fees and litigation expenses will stop.

### 3. The Parties agree that the Settlement is fair and reasonable.

The endorsement of a proposed FLSA settlement by both parties is a "factor that weighs in favor of approval" because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanilla* v. *A&R Demolition, Inc.*, 2008 WL 9410399 at \*5 (S.D. Tex. May 7, 2008). Here, both Parties believe the Settlement is a fair and reasonable resolution of the claims.

### 4. The Settlement does not undermine the purpose of the FLSA.

Additionally, the "Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power." *Baker,* 2014 WL 700096 at \*2. In making this determination, the following factors are evaluated: "(1) the presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA." *Id.*

An evaluation of these factors make clear that the settlement does not undermine the purpose of the FLSA. First, all eligible, allegedly similarly situated employees were afforded an opportunity to join this action, and no other individuals have sought to do so. Second, while it is possible that other individuals employed by Defendant in the future may have similar disputes, the risk that the Settlement Collective Members' circumstances will recur is mitigated by Defendant's implementation of mandatory arbitration agreements. Third, there has never been a finding by a judge or jury that Defendant has failed to comply with the FLSA. In contrast, as described above, Defendant maintains that it properly compensated the Settlement Collective Members at all times. Finally, the proposed Agreement provides that its terms are available to the public, which provides notice to any future plaintiffs of Plaintiff's claims and the settlement of those claims.

### c. Plaintiff's Counsel's attorneys' fees are reasonable.

### i. Standards applicable to attorneys' fee requests

Plaintiff's Counsel is entitled to a fee paid out of the common fund for the benefit of the

Settlement Collective Members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980). In class

action suits where a fund is recovered and fees are awarded therefrom by the court, the Supreme

Court has indicated that computing fees as a percentage of the common fund recovered is the proper

approach. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Tenth Circuit recognizes the

propriety of the percentage-of-the fund method when awarding fees, including in FLSA collective

actions. *See Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994); *Rosenbaum v. MacAllister*, 64

F.3d 1439, 1445 (10th Cir. 1995) (stating that there is a "preference for the percentage of the fund

method" over a lodestar calculation); *Whittington v. Taco Bell of Am., Inc.,* 2013 WL 6022972 at

*6 (D. Colo. Nov. 13, 2013) (applying percentage of the fund request for attorney's fee in FLSA

collective action); *Peterson v. Mortg. Sources, Corp.,* 2011 WL 3793963 at *9 (D. Kan. Aug. 25,

2011) ("This Court has also typically applied the percentage of the fund method when awarding

fees in common fund, FLSA collective actions.").The Supreme Court has opined that "[a] request

for attorney's fees should not result in a second major litigation," and "[i]deally of course, litigants

will settle the amount of the fee."  *Hensley*, 461 U.S. at 437 (1983). Furthermore, the

reasonableness of an award can be deduced by evidence of an arm's-length negotiation or an

agreement by defendants to a certain amount of fees that does not affect the relief afforded to a

settlement class. *See Berry v. Schulman*, 807 F.3d 600, 618–19 (2015) (recognizing that the court

may approve a fee request when there is "no reason to think that class counsel left money on the

table in negotiation[s]" and there is a "lack of objection [from class members] to the fee request").

"Absent evidence to the contrary, the court may presume that settlement negotiations were

conducted in good faith and that the resulting agreement was reached without collusion." *Kirven*

*v. Cent. States Health & Life Co.*, 2015 WL 1314086 at \*5 (D.S.C. Mar. 23, 2015) (finding no collusion based on hard-fought negotiation lasting several weeks); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975) (no collusion found when settlement not hastily arrived at and after protracted discussions).

Further, the "supervision by a mediator lends an air of fairness to agreements that are ultimately reached." *Temp. Servs. Ind. v. Am. Int'l Group Inc.*, 2012 WL 4061537 at \*12 (D.S.C. Sept. 14, 2012) ("highly adversarial litigation took place before being resolved by a formal, in-person mediation session held before [ ] a former U.S. District Court judge."). Here, the circumstances surrounding settlement establish it was reached at arm's-length and without collusion. The parties ultimately reached a resolution after extensive negotiations with the assistance of a highly-qualified mediator.

Finally, approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements. *Clark v. Ecolab Inc.*, 2010 WL 1948198 at \*7 (S.D.N.Y. May 11, 2010). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.* (citing *Lynn's Food Stores. Inc. v. United States*, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982).

In determining the attorneys' fee request, the Court must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). *See Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987). Those factors are as follows: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee, (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8)

18

amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Gottlieb*, 43 F.3d at 483. Courts also look to the number of objectors to the settlement and the attorney's fees request in determining the reasonableness of the settlement. *See, e.g. Droegemueller v. Petroleum Dev. Corp.*, 2009 U.S. Dist. LEXIS 123875, *12 (D. Colo. Apr. 7, 2009)

Although the Court may consider any or all of the *Johnson* factors, "rarely are all of the *Johnson* factors applicable," particularly in common fund cases. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. Kan. 1988). Additionally, while Plaintiff's Counsel has provided a lodestar analysis for this Court to have a full understanding of the reasonableness of the fee request, Plaintiff's Counsel notes that in common fund cases, the fee request "need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors." *Gottlieb*, 43 F.3d at 483.

### Factor 1:    The time and labor required.

This factor favors approval because Plaintiff's Counsel have dedicated at total of 481.25 hours to this litigation. (Exh. B, Turner Decl. at ¶ 57). The hours worked by Plaintiff's Counsel equals total lodestar of $286,300.05.  It is anticipated that at the conclusion of this case (including additional work to be performed at the approval stage, and work related to settlement administration and FLSA Collective Member payment processing), that Plaintiffs' Counsel will have incurred additional lodestar in a range of $10,000 to $20,000. (*Id.* at ¶ 54). As such, the requested fee will result in a modest multiplier in the range of 3.42 to 3.54. (*Id.*). Multipliers in this range awarded by district courts in the Tenth Circuit. *See e.g.*, *Mishkin v. Zynex, Inc.*, No. 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases from this district ranging from a 2.5 multiplier to a 4.6 multiplier).

19

**Factor 2:     The novelty and difficulty of the questions presented by the case.**

This factor favors approval because as discussed *supra* at pages 6-9, this action raised difficult and hotly contested issues. Further, courts have recognized that a lack of records or other evidence establishing the wages paid to and hours worked by plaintiffs may cause complications in securing a settlement in similar actions, rendering negotiations more difficult than what is typical. *See Fields v. Luther*, 1988 WL 121791 at *2 (D. Md. July 12, 1988); *Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla. 2008), *aff'd*, 307 F. App'x 349 (11th Cir. 2009).

**Factor 3:     The skill required to perform the legal service properly.**

This factor favors approval because, for nearly two years Plaintiff's Counsel has litigated this matter while going "head-to-head" with one of the nation's largest and  most well-regarded law firms. This litigation required Plaintiff's Counsel to manage 1,647 opt-ins and analyze and interpret substantial volumes of data and pay records.  This project, standing alone, required persistence and skill.

**Factor 4:     The preclusion of other employment by the attorneys due to acceptance of the case.**

Courts have recognized that attorneys taking FLSA collective action cases may be "precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages." *See Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013). This is particularly true where the case involves low-wage workers, which "mak[es] a contingent fee arrangement even more risky." *Id.*

This factor favors approval because Plaintiff's Counsel has worked on a pure contingency basis and has dedicated themselves to the litigation. Further, Plaintiff's Counsel has paid – without guarantee of recoupment – nearly $62,000 in litigation expenses in prosecuting this litigation. As

recently observed in another FLSA collective action, "[c]lass and collective wage and hour cases require intensive resources and – particularly when counsel operate, as here, on a contingency basis – pursuing these cases involves opportunity costs and risk." *Reynolds v. Fidelity Investments Institutional Operations Co., Inc.*, 2020 WL 92092 at \*9 (M.D.N.C. Jan. 8, 2020).

**Factors 5 and 12:    The customary fee/awards in similar cases.**

This factor favors approval because, in other wage and hour collective actions district courts within the Tenth Circuit (and elsewhere) routinely approve attorneys' fee in the amount of 33 1/3% of the settlement fund, or in a greater amount. *See e.g., Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972 at \*6 (D. Colo. Nov. 13, 2013) (approving 39% as "within the normal range for a contingent fee award").[1]

Additionally, the hourly rates charged by Plaintiff's Counsel are less than or consistent with rates found reasonable in the Tenth Circuit in similar cases. *See e.g., Slaughter v. Sykes Enterprises, Inc.*, 2019 WL 529512 (D. Colorado Feb. 11, 2019) (finding reasonable partner rates up to $950 per hour); *Peterson v. Nelnet Diversified Solutions, LLC,* 2022 WL 408241 at \*7 (D. Colorado February 10, 2022) (found reasonable average hourly rate across life of case in the amount of $625 ($2,161,989 in total lodestar spread across 3,455 working hours); *Prim v. Ensign United States Drilling, Inc.*, 2019 WL 4751788 at \*7 (D. Colorado Sept. 30, 2019) ("The Court has previously found that an $600 hourly rate charged by class counsel was generally consistent with the rates charged in this district."); *Shaw v. Interthinx, Inc.*, 2015 WL 1867861 at \*8 (approving hourly rates ranging from $150 to $675 per hour for attorneys and staff members).

---

[1] Similar, or greater, percentages have been awarded in other class cases. *See, e.g., Vaszlavik v. Storage Tech. Corp.*, 2000 WL 1268824 at \*2 (D. Colo. Mar. 9, 2000) ("Fees for class action settlements generally range from 20%-50%."); *Miles v. BKP Inc*., 2024 WL 2724007 at \*4 (D. Colo. May 28, 2024) (approving 38% as "within the range of fees awarded by courts in similar cases"); *Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972 at \*20 (D. Colo. Nov. 13, 2013) (approving 39% as "within the normal range for a contingent fee award").

Further, Plaintiff's Counsel's rate are justified based on their experience and expertise in call center cases like this one. In particular, Sommers Schwartz, P.C., has substantial experience representing employees in the call center industry (like a portion of the Settlement Collective Members in this case) and uniquely qualified to litigate off-the-clock cases related to pre- and post-shift computer program log-in and log-out activities (hereinafter "call center cases"). Specifically, Sommers Schwartz, P.C. has litigated over 130 call center cases (totaling hundreds of thousands of employees) over the last 12 years. Additionally, Sommers Schwartz, P.C., has filed over 800 individual call center case arbitrations. In total, Sommers Schwartz, P.C., has recovered over $76,000,000 in damages for employees in call center cases over the last 12 years. (Exh. B, Turner Decl. at ¶ 10). Finally, Plaintiff's Counsel's rates have been found reasonable by multiple courts across the country. (*Id.* at ¶ 54).

<strong>Factor 6:        Whether the fee is fixed or contingent.</strong>

Further, the attorneys' fees in this case were contingent. This factor weighs in favor of the requested attorneys' fees award, because "[s]uch a large investment of money [and time] place[s] incredible burdens upon ... law practices and should be appropriately considered." *Feerer v. Amoco Prod. Co.,* 1998 U.S. Dist. LEXIS 22248 at *33 (D. N.M. 1998); *see also Been v. O.K. Indus., Inc.,* 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

This factor favors approval because the requested $1,050,000 fee is a reasonable expectation where Plaintiff's Counsel litigated the case for nearly two years, took on a risk of non-payment even as they incurred nearly $290,000 in lodestar and advanced nearly $62,000 in litigation expenses to pursue the litigation.

<strong>Factor 7:        Time limitations imposed by the client or the circumstances.</strong>

22

This factor favors approval because, throughout this litigation, the Court has required all counsel to comply with strict case management deadlines.

**Factor 8:      The amount involved and the results obtained.**

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). See also *Dalal v. Alliant Techsystems, Inc.*, 927 F. Supp. 1374, 1381 (D. Colo. 1996) ("The degree of success a plaintiff enjoys is a critical factor in determining the amount of fees to be awarded)."

This factor favors approval because, when viewed against the various litigation risks, the settlement delivers a substantial result to the Settlement Collective Members. As discussed *supra* at pages 8-9 the settlement represents an outstanding result in light of the potential damages of the Settlement Collective Members and in light of Defendant's multiple defenses. Specifically, the $3,150,000 gross settlement amount equates to 47.39% of Defendant's maximum alleged damage exposure.[2] (Exh. B, Turner Decl. at ¶ 39). Further, the $3,150,000 settlement equals a gross amount of $1,911.41 to each Settlement Collective Member. This is a tremendous result when compared to similar wage and hour cases and equates to payment of approximately 81.2 hours of compensation to each of the Settlement Collective Members. (*Id.* at ¶ 40).

**Factor 9:      The experience, reputation, and ability of the attorneys.**

This factor favors approval because Plaintiff's Counsel are experienced employment

---

[2] In fact the settlement amount is far greater than the ordinary recovery in class cases. *See,* Fredrick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: *What Explains Settlements in Shareholder Class Actions?* (National Economic Research Assocs. (NERA) (June 1995) (finding an average allocation of 7% to 11% for class members; *See also, Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding a settlement of approximately one-third of claimed unpaid wages, before deduction of attorneys' fees and costs, to be "exceptional").

lawyers who have had substantial success representing clients in the federal courts. (*See* Exh. B, Turner Decl. at ¶¶ 2-7; Exh. C, Melmed Decl. at ¶¶ 7-9; Exh. D, Hollingsworth Decl. at ¶ 5).

In particular, Sommers Schwartz, P.C., has substantial experience representing employees in the call center industry (like a portion of the Settlement Collective Members in this case) and uniquely qualified to litigate off-the-clock cases related to pre- and post-shift computer program log-in and log-out activities (hereinafter "call center cases"). Specifically, Sommers Schwartz, P.C. has litigated over 130 call center cases (totaling hundreds of thousands of employees) over the last 12 years. Additionally, Sommers Schwartz, P.C., has filed over 800 individual call center case arbitrations. In total, Sommers Schwartz, P.C., has recovered over $76,000,000 in damages for employees in call center cases over the last 12 years. (Exh. B, Turner Decl. at ¶ 10).

### Factor 10:    The "undesirability" of the case.

This factor weighs in favor of Plaintiffs' Counsel because most law firms do not have the resources or appetite to risk nearly $62,000 in out-of-pocket litigation expenses and nearly $290,000 in working time.

### Factor 11:    The nature and length of the professional relationship with the client.

Plaintiff's Counsel had no pre-existing relationship with the Plaintiff. But, "[t]he meaning of this factor ... and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Barbosa v. National Beef Packing Co., LLC*, 2015 WL 4920292 at *12 (D. Kansas Aug. 18, 2015).

### Summary:

In sum, eleven of the twelve pertinent factors support approval of the requested $1,050,000 attorneys' fee. The remaining factor is "inconsequential" (Factor 11).

### ii.  The lodestar cross-check also confirms the reasonableness of the fee

**request**

While not required, Courts that award attorney's fees based upon the percentage of the fund may crosscheck the requested fee award by the lodestar amount. "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (confirming fee request where percentage of the fund resulted in a lodestar multiplier of 3.65), *cert. denied*, 537 U.S. 1018, 123 S. Ct. 536, 154 L. Ed. 2d 425 (2002).

"In applying the crosscheck "multipliers from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Id.* (confirming fee request where percentage of the fund resulted in a lodestar multiplier of 3.65; *In re Core Bond Fund*, 2011 WL 13223541 (D. Colo. Sept. 30, 2011) (4.25 multiplier); *Mishkin v. Zynex, Inc.*, 2012 WL 4069295 at *2 (D. Colo. Sep. 14, 2012) (collecting cases in the 10th Circuit approving multipliers ranging from 2.5 to 4.6); *In re Rite Aid*, 396 F.3d 294, 306 (3d. Cir. 2005) (*citing Task Force Report*, 108 F.R.D. at 243) (approving a lodestar multiplier of 4.07).

In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry," *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006), or "mathematical precision," *In re Rite Aid Corp.*, 396 F.3d at 306-07. A court need not involve itself with "a review of actual [attorney] time sheets." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592-93 (D. NJ. 2010). Indeed, where there have been no objections to the requested fee, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Id.*; *see also Kirsch v. Delta Dental*, 534 Fed. Appx. 113, 117 (3d Cir. 2013). Additionally, while lodestar multipliers are a relevant consideration in determining if the fee request is reasonable, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005).

This factor favors approval because Plaintiff's Counsel have dedicated at total of 501.95

hours to this litigation. (Exh. B, Turner Decl. at ¶¶ 48-50). The hours worked by Plaintiff's Counsel
equals total lodestar of $297,567.55. (*Id.* at ¶ 57). It is anticipated that at the conclusion of this case
(including additional work to be performed at the approval stage, and work related to settlement
administration and Settlement Collective Member payment processing), that Plaintiff's Counsel
will have incurred additional lodestar in a range of $15,000 to $25,000. (*Id.* at ¶ 57). As such, the
requested fee will result in a modest multiplier in the range of 3.25 to 3.35. (*Id.*).

Thus, the lodestar cross-check further confirms the reasonableness of the fee request.
Accordingly, Plaintiff's Counsel respectfully requests this Court award the requested fee as it is
reasonable upon consideration of the relevant *Johnson* factors, there have been no objections from
the Settlement Collective Members, and the lodestar cross-check confirms the reasonableness of
the request.

### d. The requested litigation expenses and settlement administration fees are reasonable.

The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee ... **and costs
of the action**." 29 U.S.C. § 216(b); *see, e.g.*, *Gray v. Phillips Petrol. Co.*, 971 F.2d 591, 593 (10th
Cir. 1992) (emphasis added). "Expenses are compensable in a common fund case if the particular
costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v.
Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993)).

Here, Plaintiff's Counsel seek the reimbursement of litigation expenses in an amount not to
exceed $65,000. The expenses incurred to date, totaling $61,194.50, are detailed and supported in
the accompanying declaration and were reasonably and necessarily incurred considering the
duration, scope, and complexity of this nationwide collective action. (Exh. B, Turner Decl. at ¶¶
66-68).

The Settlement Collective Members will be serviced by professional services provider
Atticus Administration, LLC ("Atticus"), who will serve as settlement administrator.  Atticus has

been approved by Courts across the country and is perhaps the leading settlement administrator

for class actions in the country. Plaintiff's Counsel has used its services in numerous settlements

of this nature and found its services exemplary. (*Id.* at ¶ 64). Estimates provided by Atticus indicate

that settlement administration for this case should not exceed $17,000. The amount is reasonable

given the number of individuals involved in the Settlement. (*Id.* at ¶ 65).

### e. The proposed service payment is reasonable.

A service payment is appropriate where the named plaintiff remained fully involved and

expended considerable time and energy during the course of the litigation. *Ostrander v. Customer

Eng'g Servs., LLC*, 2019 WL 764570 at *4 (D. Colo. Feb. 20, 2019); *Pliego v. Los Arcos Mexican

Rests., Inc.,* 313 F.R.D. 117, 131 (D. Colo. 2016). Such involvement includes participating in the

discovery process, including: participating in the preparation of pleadings filed on behalf of the

class; soliciting updates on the status of the litigation; and participating in settlement decisions,

among other tasks. *Id.*

Here, the settlement calls for a service payment in the amount of $7,500 to Named Plaintiff

Linda Crouse. In class/collective litigation, such service payments "compensate named plaintiffs

for the services they provided and the risks they incurred during the course of class action litigation,

and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan

v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011).

Service payments:

[A]re particularly appropriate in the employment context. In employment litigation, the
plaintiff is often a former or current employee of the defendant, and thus, by lending his
name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of
adverse actions by the employer or co-workers. . . . Although this Court has no reason to
believe that [the defendant] has or will take retaliatory action towards either [Plaintiff] or
any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities
cannot be dismissed as insincere or unfounded.

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005) (internal citations
omitted).

The requested service payment is warranted. The Named Plaintiff was a critical component to the litigation. She enabled Plaintiff's Counsel to understand the claims at issue and provided evidence necessary to prosecute the claims and obtain settlement. Crouse was a diligent advocate for the Settlement Collective Members and dedicated substantial time and effort to the case. (Exh. B, Turner Decl. at ¶¶ 69-70).

Approving the requested service payment will promote important public policies underlying Plaintiff's wage-and-hour claims. Plaintiff's claims are brought under the FLSA, a remedial statute intended to protect the rights of workers. *See Tennessee Coal Iron & R. Co., v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944) (abrogated on other grounds). Furthermore, the FLSA's strong public policy in favor of strict enforcement of minimum wage and overtime laws is well-established and fundamental to the FLSA's protective purpose. *See Loeza v. JP Morgan Chase Bank NA,* 2014 WL 4912730 at *3 (S.D. Cal. Sept. 30, 2014) ("an employer who knows or should have known that an employee is or was working overtime is obligated to pay overtime [] even if the employee does not make a claim for the overtime compensation.") (quoting *Lindow v. United States,* 738 F.2d 1057, 1060–61 (9th Cir.1984)).

The requested service payment falls within or below the typical range of awards approved by district courts in the Tenth Circuit. *See e.g., Candelaria v. Health Care Service Corporation*, 2020 WL 6875828 at *3 (D. New Mexico Nov. 4, 2020) (approving $5,000 service award to named plaintiffs); *Blanco v. Xtreme Drilling and Coil Services, Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 4041456, *7 (D. Colo. July 17, 2020) (approving $24,000 service award in part due to risk of oil industry "blackballing"); *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-NRN, 2020 WL 4057585, *3 (D. Colo. July 20, 2020) (approving $20,000 service award).

## IV.    <u>CONCLUSION</u>

For all the above reasons, Plaintiff submits that the settlement warrants approval in full. Accordingly, Plaintiff respectfully asks the Court to grant this motion and sign and enter the accompanying proposed order approving the settlement. (Exh. E, Proposed Order).

Dated: October 16, 2025              Respectfully submitted

                           /s/ *Matthew L. Turner*
                           Matt L. Turner (admitted *pro hac vice*)
                           Paulina Kennedy (admitted *pro hac vice*)
                           SOMMERS SCHWARTZ, P.C.
                           One Towne Square, 17th Floor
                           Southfield, Michigan 48076
                           Phone: (248) 355-0300
                           mturner@sommerspc.com
                           pkennedy@sommerspc.com

                           April L. Hollingsworth (Bar No. 9391)
                           HOLLINGSWORTH LAW OFFICE, LLC
                           1881 South 1100 East
                           Salt Lake City, Utah 84105
                           Telephone: (801) 415-9909
                           april@aprilhollingsworthlaw.com

                           *Attorneys for Plaintiff and the Settlement Collective Members*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                           */s/ Matthew L. Turner*
                           Matthew L. Turner